UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BERNANDINE JORDAN,<br>*Plaintiff*, | 3:18-cv-384 (KAD) |
| v. | |
| | March 29, 2019 |
| NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,<br>*Defendant*. | |

## MEMORANDUM OF DECISION
## RE: PLAINTIFF'S MOTION TO REVERSE OR REMAND (ECF NO. 20) AND DEFENDANT'S MOTION TO AFFIRM (ECF NO. 28)

**Preliminary Statement**

The Plaintiff, Bernadine Jordan, brings this appeal pursuant to 42 U.S.C. §405(g). She appeals the Defendant Commissioner's decision denying her disabled widow's benefits ("DWB") and Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act (hereinafter "the Act"), based upon a finding that she is not "disabled" under the Act. She seeks an order of this Court reversing the Commissioner's decision on the grounds that the Commission erred as a matter of law and that the Commissioner's findings are not supported by substantial evidence in the record. Alternatively, she seeks a remand to the Commissioner for further proceedings. The Commissioner, on the other hand, avers that the Commissioner's findings are supported by substantial evidence in the record and were made using the correct legal standards. She asks this Court to affirm the decision.

For the reasons set forth below, the Plaintiff's motion is GRANTED insofar as the case is remanded for rehearing pursuant to sentence four of 42 U.S.C. § 405(g). The Defendant Commissioner's motion is DENIED.

**Standard of Review**

The Plaintiff sought a determination that she was disabled as of June 28, 2011, the purported date of onset, through the date of the hearing on her application. A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to which an ALJ must adhere when evaluating disability claims. *See* 20 C.F.R. 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in

Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity (hereinafter "RFC") to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to steps one through four. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The Commissioner bears the burden as to step five, that is, finding the existence of work in the national economy that the claimant is capable of performing. *McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner..., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). It is well-settled that the district court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The Court does not inquire as to whether the record might also support the Plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld").

However, before the Court undertakes such analysis, it "must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act.'" *Cruz v. Barnhart*, 343 F.Supp.2d 218, 220 (S.D.N.Y. 2004) (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990). "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996) (internal citations omitted); *see also Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508–09 (2d Cir. 2009) ("[S]ocial security hearings are not (or at least are not meant to be) adversarial in nature."). "It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 220 (S.D.N.Y. 2004). "When a record is incomplete, a decision based thereon is not supported by substantial evidence." *Beutel v. Berryhill*, No. 3:17CV01193(SALM), 2018 WL 3218662, at *10 (D. Conn. July 2, 2018) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)).

Indeed, the law is clear that "where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate. And when 'further findings would so plainly help to assure the proper disposition of [the] claim, … remand is particularly appropriate.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). Remand is also appropriate where the Court is "'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" *Pratts*, 94 F.3d at 39 (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).

**The ALJ's Decision**

At step one, the ALJ determined that the Plaintiff had not been engaged in substantial gainful activity since the claimed onset date, June 28, 2011. At step two, the ALJ found that the Plaintiff had severe impairments, specifically, anxiety, depression, degenerative disc disease of the lumbar spine, and alcohol, cocaine, and marijuana abuse. The ALJ rejected the claim that the Plaintiff's borderline intellectual functioning was severe. At step three, the ALJ found that the Plaintiff did not establish an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ determined that the Plaintiff had an RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). The ALJ placed limitations on this determination, however, finding that the Plaintiff was limited to, *inter alia,* frequent climbing of ladders, ropes, or scaffolds; frequent kneeling, crouching, and crawling; simple, routine, and repetitive tasks; only occasional contact with coworkers; and no contact with the public. The ALJ determined that the Plaintiff had no past relevant work. At step five, crediting the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that the Plaintiff could perform even with the limitations identified above. The ALJ therefore concluded that the Plaintiff was not disabled as of June 28, 2011, or at any time thereafter through the date of the hearing.

**Discussion**

Although the ALJ's decision articulated his reasons and the relevant portion of the record on which he relied in reaching his decision, upon review, the Court finds that the record upon which his decision was based is incomplete and inadequate, and the matter must be remanded for the purpose of further developing the record. In short, the Court is not satisfied that the Plaintiff

received a full and fair hearing. *See Rose v. Comm'r of Soc. Sec.*, 202 F.Supp.3d 231, 239 ("A remand by the court for further proceedings is appropriate when the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the regulations.")

Specifically, the Court identifies three areas of concern, each of which might require a remand, but in the aggregate unquestionably require a remand. First, the ALJ made an unsupported factual determination that the Plaintiff "has at least a high school education." Although it appears that she may have told Dr. Martinez that she had her GED, she testified by way of clarification that "it" was not a GED, whatever "it" is. She further testified that she discontinued her education after seventh grade. Her written submissions evidenced significant deficits in both spelling and grammar at a level inconsistent with a high school education. Further undermining the ALJ's finding, the Plaintiff testified: "I don't read. I can't spell that good. I don't spell good because I haven't had that much education. So I read a little bit." The ALJ did not have her school records or any way to definitively determine whether she had her GED or some (potentially significantly) lesser level of education.[1] This is particularly salient in view of the ALJ's second problematic determination that her "borderline intellectual functioning" was "not severe."

In December 2011, Dr. Martinez diagnosed the Plaintiff with borderline intellectual functioning. Dr. Martinez noted that the Plaintiff had a history of special education or help with spelling and reading; and although the Plaintiff was not delusional, her reasoning skills were very weak, her thought processes were overly concrete, her fund of information was low as was her

---

[1] That the ALJ may have factually misstated the Plaintiff's level of educational achievement is particularly troubling in light of the presumptions afforded to and the significant differences between the educational achievement categories of "marginal education," *see* 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2); "limited education," *see* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3); and "high school education and above," *see* 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).

understanding of hypothetical social situations. Dr. Martinez also found that the Plaintiff's ability to concentrate was very low. The Plaintiff's counselor, Christina Danforth, testified that the Plaintiff's memory was so poor that information had to be repeated over and over before it would "stick." She testified that the Plaintiff could not figure out and accurately complete the paperwork to get housing and that she would not have been able to secure housing (after being homeless for two years), without Danforth's assistance.

Faced with this and other substantial evidence that the Plaintiff has significant cognitive deficits, the ALJ nonetheless determined that the Plaintiff's borderline intellectual functioning was not severe. The ALJ reached this conclusion because the Plaintiff was able to survive living on the street by getting to the soup kitchen and the thrift store; she was able to successfully complete Intensive Outpatient substance abuse treatment; she went to the movies with her mother; and she read her bible. As stated above, the record is replete with indications that her intellectual and cognitive limitations are far greater than as assessed by the ALJ. To fully develop the record on this issue, especially in the absence of any school or special education records, a full-scale IQ test, or a similar assessment, should have been obtained.

Finally, the ALJ gave little weight to Christina Danforth, LPC, the treatment provider with the greatest knowledge of the Plaintiff's day-to-day mental health struggles. Under the criteria set forth in 20 C.F.R. § 404.1527, Danforth's opinion is entitled to significant weight. The ALJ however gave it little weight. This may well have been within the ALJ's purview, but the record reflects that the treatment records from Danforth's employer, Authentic Recovery, regarding the Plaintiff were not provided, as a "matter of policy." These records, which would include Danforth's treatment notes, could have and should have been subpoenaed. Whether the treatment

notes are consistent or inconsistent with the proffered opinion is critical to determine the weight to be afforded the opinion.

Therefore, the case is remanded for further administrative proceedings consistent with this order, pursuant to sentence four of 42 U.S.C. § 405(g). *See Aubeuf v. Schweiker,* 649 F.2d 107, 116 (2d Cir. 1981). On remand the ALJ is directed to (1) obtain the Plaintiff's school records or otherwise further develop the record to determine the Plaintiff's level of education[2]; (2) further develop the record sufficiently to ascertain the Plaintiff's full-scale IQ, *see* 20 C.F.R. §§ 404.1512(f); 416.912(f) (noting that if information is not readily available from a claimant's records a consultative examination may be ordered)[3]; (3) obtain, by subpoena if necessary, any and all records regarding the Plaintiff's treatment at Authentic Recovery; (4) consider the opinions of all consultants and treatment providers anew in light of this further developed record; (5) conduct steps two and three and fashion the RFC anew in light of the foregoing and in accordance with the applicable statutory regulations in effect on November 29, 2016; and (6) address the Plaintiff's other claims as appropriate.[4]

On remand, the Commissioner shall assign a new ALJ to this case. Although the selection of a new ALJ on remand is normally within the discretion of the Commissioner, *see Hartnett v. Apfel,* 21 F.Supp.2d 217, 222 (E.D.N.Y. 1998), under 20 C.F.R. § 404.940, "remand to a new ALJ is necessary in those situations which compromise" the integrity of the disability review process. *Sutherland v. Barnhart,* 322 F.Supp.2d 282, 292 (E.D.N.Y.2004) (internal citations omitted). "Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental

---

[2] Indeed, the ALJ himself recognized "[t]hat's something to look into."
[3] The Court recognizes that the content of the school records may include this information, or other information sufficient to assess the Plaintiff's actual intellectual functioning or cognitive deficits - in which case, the need for consultation or an IQ test may well be vitiated.
[4] The Court has identified only those concerns which, in the Court's view, require remand and rehearing. However, the ALJ's decision, read against the record as a whole, leaves the Court with substantial concerns regarding the objectivity and neutrality with which the Plaintiff's claim was evaluated.

fairness of the disability review process, remand to a new ALJ is appropriate." *Id.* Factors the Court may consider in making this determination include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; or (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Id.* Applying these factors to this case, the Court concludes that the case should be assigned to a different ALJ on remand. *See* n.4, *supra.*

To the extent the Plaintiff asserts additional reasons to question the sustainability of the ALJ's decision, the Court does not reach those issues having already determined "that remand of this matter for further administrative proceedings is necessary." *Colon Medina v. Comm'r of Soc. Sec.,* 351 F.Supp.3d 295, 304 (W.D.N.Y. 2018); *see also Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13CV06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the Court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *report and recommendation adopted,* No. 13 CIV. 06844 LGS DF, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

For the foregoing reasons, the Plaintiff's motion to reverse or in the alternative to remand this matter is GRANTED as to the request for a remand. The Defendant's motion to affirm is DENIED. The Clerk of the Court is instructed that if any party appeals to this Court the decision made after this remand, any subsequent appeal is to be assigned to the undersigned.

The Clerk of the Court is ordered to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of March 2019.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE